UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

AMBER SORRELL, and QUANEISHA WOODRIUM, individually and on behalf of all other persons similarly situated who were employed by BETSY ROSS OPERATIONS, LLC, and/or any other entities affiliated with or controlled by BETSY ROSS OPERATIONS, LLC,

Plaintiffs,

-against-

BETSY ROSS OPERATIONS, LLC, and any related entities,

Defendant.

**FLSA COLLECTIVE ACTION**

**and**

**CLASS ACTION**

Docket No.:5:25-cv-1501 (BKS/ML)

**JURY TRIAL DEMANDED**

Named Plaintiffs Amber Sorrell, and Quaneisha Woodrum (collectively "Named Plaintiffs"), by their attorneys Gattuso & Ciotoli, PLLC; allege upon knowledge to themselves and upon information and belief as to all other matters as follows:

## PRELIMINARY STATEMENT

1. This action is brought pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§ 206, 207, and 216(b); New York Labor Law § 190 *et seq.*, New York Labor Law §§ 650 *et seq.* and 663; 12 New York Codes, Rules and Regulations (hereinafter referred to as "NYCRR") §§ 142 *et. seq.* to recover unpaid wages and overtime compensation as well as related damages owed to the Named Plaintiffs and all similar situated persons (collectively "Plaintiffs") who are formerly employed by Defendant Betsy Ross Operations, LLC ("Betsy Ross"), or any other staffing agencies providing similarly situated persons to Defendant Betsy Ross, and/or any other entities affiliated with or controlled by Betsy Ross (hereinafter "Defendants") in trades and occupations entitled to receive overtime compensation.

2. From at least October 2019 and continuing through the present, Defendant has engaged in a policy and practice of depriving its employees of the applicable straight time wages and overtime wages for work they performed as mandated by federal and state law due to 30-minute meal breaks being automatically deducted from employees' paychecks whether or not the employees actually received a full or partial 30-minute meal break.

3. From at least October 2019 and continuing through the present, Defendant has engaged in a policy and practice of having its employees regularly work in excess of 40 hours per week without providing overtime compensation as required by the applicable federal and state laws due to 30-minute meal breaks being automatically deducted from employees' paychecks whether or not the employees actually received a full or partial 30-minute meal break.

4. Upon information and belief, Defendant also failed to provide appropriate wage notices and pay statements to Named Plaintiffs and those similarly situated as required under NYLL.

5. Named Plaintiffs have initiated this action seeking for themselves, and on behalf of all similarly situated employees, all compensation, including straight time wages and overtime compensation of which they were deprived, plus interest, damages, and attorneys' fees and costs.

## JURISDICTION

6. Jurisdiction of this Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367 of the claims brought under New York Labor Law.

7. The statute of limitations under FLSA, 29 U.S.C. § 255(a), for willful violations is three (3) years.

8. The statute of limitations under New York Labor Law § 198(3) is six (6) years.

## VENUE

9. Venue for this action in the Northern District of New York under 28 U.S.C. § 1391(b) is appropriate because a substantial part of the events or omissions giving rise to the claims occurred in the Northern District of New York.

## THE PARTIES

10. Named Plaintiff Amber Sorrell is an individual who is currently a resident of Oneida County, New York, and is currently employed by Defendant Betsy Ross as a Certified Nursing Assistant (CNA), and has been an employee of Defendant since 2023.

11. Named Plaintiff Quaneisha Woodrum is an individual who is currently a resident of Oneida County, New York, and was employed by Defendant Betsy Ross as a per diem Certified Nursing Assistant (CNA) from 2018 to August 2025.

12. Upon information and belief, Defendant Betsy Ross Operations, LLC, is a domestic limited liability company organized and existing under the laws of the State of New York and authorized to do business within the State of New York, with a principal place of business at 1 Elsie Street, Rome, NY, 13440.

13. Defendant Betsy Ross operates a nursing home and rehabilitation center located at 81 Elsie Street, Rome, NY, 13440, where it employed the Named Plaintiffs and putative class members.

14. At all times relevant to this action, Defendant Betsy Ross was Named Plaintiffs' employer as defined by NYLL §§ 2(6), 190(3), and 651(6), as well as 29 U.S.C. § 203, *et seq.*

## CLASS ALLEGATIONS

15. Named Plaintiffs reallege and incorporate by reference all the allegations set forth above.

16. This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.

17. This action is brought on behalf of Named Plaintiffs and a class consisting of similarly situated employees who worked for Defendant as Registered Nurses, Certified Nurse Assistants, Licensed Practical Nurses, and other employees paid hourly wages while performing similar direct nursing and personal care support in furtherance of Defendant Betsy Ross' operations as a nursing home and medical facility, and who had meal breaks automatically deducted from their wages while working at Defendant Betsy Ross.

18. Named Plaintiffs and potential Plaintiffs who elect to opt-in as part of the collective action are all victims of Defendant's common policy and/or plan to violate the FLSA and NYLL by failing to pay Named Plaintiffs and those similarly situated their regular hourly wage for all hours worked, and overtime hours at one and one-half times their regular hourly wages for all hours worked in excess of 40 in a week.

19. The putative class is so numerous that joinder of all members is impracticable. The size of the putative class is believed to be hundreds of employees. Additionally, the names of all potential members of the putative class are not known.

20. The questions of law and fact common to the putative class predominate over any questions affecting only individual members. These questions of law and fact include but are not limited to: (1) whether Defendant failed to pay the appropriate regular wages for hours up to 40 in a week and overtime wages for all hours worked in excess of 40 in a week; (2) whether Defendant failed to provide Named Plaintiffs with proper wage notices and wage statements during the time of their employment.

21. The claims of Named Plaintiffs are typical of the claims of the putative class members. Named Plaintiffs and putative class members were all subject to Defendants policies and willful practice of failing to pay regular and/or minimum wages and failure to pay overtime wages for all hours worked; as well as Defendants failure to provide wage notices as required by NYLL.

22. Named Plaintiffs and counsel will fairly and adequately protect the interests of the putative class. Named Plaintiffs has retained counsel experienced in complex wage and hour collective and class-action litigation.

23. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Named Plaintiffs and putative class action members lack the financial resources to adequately prosecute separate lawsuits against Defendants. A class action will also prevent unduly duplicative litigation resulting from inconsistent judgments pertaining to Defendants policies.

## FACTS

24. Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

25. This action is properly maintainable as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b).

**Named Plaintiff Amber Sorrell**

26. Named Plaintiff Amber Sorrell has been directly employed by Defendant Betsy Ross since 2023 as a Certified Nursing Assistant (CNA).

27. Named Plaintiff Sorrell has been paid varying rates of pay throughout her time working for Defendant. Her current hourly rate is approximately $24.50 per hour.

28. Named Plaintiff Sorrell typically works 10:00pm – 6:00am every day of the week, Sundays through Saturdays, while getting every other Tuesday and every other weekend (Saturdays and Sundays) off.

29. Named Plaintiff Sorrell typically works overtime hours.

30. On average, Named Plaintiff Sorrell works 40-60 hours per week.

31. Defendant has a policy and practice of automatically deducting 30-minute meal breaks from the paychecks of employees, including Named Plaintiff Sorrell and the putative class members, whether or not they actually take a full or partial meal break.

32. Named Plaintiff Sorrell regularly works through unpaid meal breaks because she has been too busy attending to patients to take a full or partial 30-minite meal break.

33. When Named Plaintiff Sorrell has worked through an unpaid meal break it was sometimes at the overtime rate of pay.

**Named Plaintiff Quaneisha Woodrum**

34. Named Plaintiff Quaneisha Woodrum was employed directly by Defendant Betsy Ross from 2018, through August 2025, as a Certified Nursing Assistant (CNA).

35. Named Plaintiff Woodrum was paid varying rates of pay throughout her time working for Defendant.

36. As a per diem employee, Named Plaintiff Woodrum worked varying hours and shifts throughout each workweek based on Defendant Betsy Ross' needs and what she was asked to work.

37. Throughout the entirety of her employment with Defendant Betsy Ross, Named Plaintiff Woodrum regularly worked at least five (5) days per week, and over 40 hours each work week.

38. Named Plaintiff Woodrum is not in possession of her pay statements from Defendant Betsy Ross.

39. Named Plaintiff Woodrum does not have access to her employment and pay records from Defendant Betsy Ross since leaving her job.

40. Named Plaintiff Woodrum will request her pay statements from Defendant Betsy Ross with an authorization and through the discovery process of this litigation, and upon receipt of the same she will amend this complaint to provide details regarding her overtime hours.

41. Defendant has a policy and practice of automatically deducting 30-minute meal breaks from the paychecks of employees, including Named Plaintiff Woodrum and the putative class members, whether or not they actually take a full or partial meal break.

42. Named Plaintiff Woodrum regularly worked through unpaid meal breaks because she was too busy attending to patients to take a full or partial 30-minite meal break.

43. When Named Plaintiff Woodrum worked through an unpaid meal break it was sometimes at the overtime rate of pay.

**Defendant Betsy Ross' Operation**

44. This action is brought on behalf of Named Plaintiffs and a putative class collective consisting of similarly situated employees who worked for Defendant as hourly paid Registered Nurses, Certified Nurse Assistants, and Licensed Practical Nurses, and other employees performing similar direct nursing and personal care support in furtherance of Defendant's operations.

45. Defendant Betsy Ross operates one primary facility on its premises at 1 Elsie Street, Rome, NY, 13440, referred to as Betsy Ross Nursing Facility, that is used for providing residential nursing homes and medical care services.

46. On any given day at Betsy Ross, there are either 8 or 16 hour shifts being worked by Registered Nurses, Certified Nursing Assistants, and Licensed Practical Nurses.

47. The Betsy Ross facility has two (2) working wings, referred to as Wing 1 and Wing 2, plus a specialized Memory Care unit that is part of Wing 1, with approximately 95-100 total residents at a given time.

48. On any given day at Defendant Betsy Ross' facility, there are three (3) shift changes throughout the day, those being the morning shift (6:00am – 2:00pm), the afternoon/evening shift (2:00pm – 10:00pm), and the overnight shift (10:00pm – 6:00am).

49. Upon information and belief, during each morning and afternoon/evening shift respectively, Defendant Betsy Ross would have approximately one (1) Registered Nurse (RN), two to three (2-3) Certified Nurse Assistants (CNA), and one (1) Licensed Practical Nurses (LPN) working in the non-memory care portion of Wing 1.

50. Upon information and belief, during each morning and afternoon/evening shift respectively, Defendant Betsy Ross would have approximately one (1) Registered Nurse (RN), three (3) Certified Nurse Assistants (CNA), and one (1) Licensed Practical Nurses (LPN) working in the Memory Care unit within Wing 1.

51. Upon information and belief, during each morning and afternoon/evening shift respectively, Defendant Betsy Ross would have approximately 1 one (1) Registered Nurse (RNs), four to five (4-5) Certified Nurse Assistants (CNA), and two (2) Licensed Practical Nurses (LPN) working in Wing 2.

52. Upon information and belief, during each overnight shift, Defendant Betsy Ross would have approximately one (1) Registered Nurse (RNs), six (6) Certified Nurse Assistants

(CNA), and two (2) Licensed Practical Nurses (LPN) working to cover the entire building (Wing 1, Wing 2, and Memory Care together).

53. Upon information and belief, the putative class spanning the entire statutory period of time is well into the 100s.

54. While working for Defendant, Named Plaintiffs and other similarly situated employees were regularly required to perform work for Defendant without receiving pay for all hours worked and overtime compensation when appropriate, as required by applicable federal and state law.

55. Throughout the entire duration of their employment with Defendant Betsy Ross, Named Plaintiffs would clock in at the beginning of their shifts, and then clock out at the conclusion of it using Defendant's time-keeping system.

56. For every shift over six hours, one-half hour (30 minutes) would be automatically deducted from Named Plaintiffs' pay for a meal break.

57. When the Named Plaintiffs would work double shifts (16-hour long shifts), two (2) one-half hour (30 minutes) would be automatically deducted from their pay for meal breaks, one for each 8-hour long period they worked.

58. Named Plaintiffs' and all similarly situated Registered Nurses, Certified Nurse Assistants and Licensed Practical Nurses who worked through their meal breaks were subject to Defendant's auto-deduction practice and did not get paid for the time they spent working through their breaks.

59. Named Plaintiffs, and those similarly situated, were all typically too busy working and caring for patients due to consistent staffing problems to take a full, or even partial, uninterrupted work-free meal break during their shifts that were over six hours long.

60. Up until late 2024, Defendant Betsy Ross did not require or instruct employees to manually clock out for meal breaks because the 30-minutes of time for those breaks would always be automatically deducted regardless whether they took a break or not.

61. Starting in late 2024, under new leadership, Defendant Betsy Ross began instructing all nursing employees to manually clock out for meal breaks.

62. Facing pressure and the threat of disciplinary action from Defendant Betsy Ross, many employees, including the Named Plaintiffs, would manually clock out for what should have been uninterrupted 30-minute meal breaks during their shifts. However, due to their workloads and staffing shortages, almost all of these employees would typically return to work immediately after clocking out for a break and continue working throughout the entire 30-minute period, and then clock back in without ever having actually taken an uninterrupted break.

63. In the event an employee did not clock out for a meal break, Defendant Betsy Ross would still automatically deduct 30 minutes from the employee's time records, regardless whether the employee actually got to take a full or partial break.

64. On the rare occasion when either of the Named Plaintiffs would have time to take a meal break, they would regularly be harassed, and even threatened with disciplinary action, by superiors into returning to work and only getting a partial break.

65. For example, on multiple occasions when Named Plaintiff Woodrum attempted to take a meal break, she would be confronted by one of her superiors, such as Tammy [last name unknown] (supervisor from Wing 2) and Ludmelia G. (nightshift RN). If seen taking a break, these individuals would harass, berate, and even threaten Named Plaintiff Woodrum with disciplinary action (ex. write-up) if she did not end her break and return to work.

66. Named Plaintiff Sorrell was also harassed threatened with disciplinary action by various supervisors for trying to take a full break on the rare occasion she could. People who harassed and/or threatened her included Tammy, Ludmelia, Robert (former night supervisor), Kelly (supervisor), and Cody Francisco.

67. In such instances where either of the Named Plaintiffs, or other members of the putative class, could only take a partial break before returning to work, Defendant Betsy Ross would still automatically deduct a full 30 minutes from their time records.

68. The degree to which Named Plaintiffs and those similarly situated were overworked and too busy to take a full 30-minute uninterrupted meal break, or any meal break at all, is well documented.

69. On multiple occasions, the Named Plaintiffs verbally complained to Cody Francisco in Defendant's Human Resources Department, or Defendant's acting Director at the time, about not being paid for working through full or partial meal breaks. For Mr. Francisco, he would merely dismiss or not respond to these complaints, and just say something along the lines of "well, this is what we got."

70. In addition, since late 2024, there is clipboard or binder stationed in the hallway at Betsy Ross by the time clock where Named Plaintiffs and other putative class members could record in writing requests for corrections to their work time, such as missing a punch time or working through a meal break that they were automatically deducted. This is referred to as to "missed punch form."

71. Named Plaintiffs, and other members of the putative class, have reported on the missed punch book times that they worked through their shifts without taking a 30-minute meal

break, and requested to be paid for that time. They would still not be paid for that time by Defendant.

72. Defendant never responded to or fulfilled any of the Named Plaintiffs' requests to be reimbursed for meal break time they worked through that had automatically been deducted under Defendant's policy and practice.

73. Defendant did not honor any procedures for reversing the automatic deduction or recouping pay for time worked in the event employees did not take a full uninterrupted work-free meal break.

74. Upon information and belief, this procedure and circumstances were the same for all members of the putative class.

75. Despite knowing that employees were working full shifts without getting to take meal breaks, Defendant would still enforce that they clock out for times they should have been able to take a break and automatically deduct the one-half hour of pay from their recorded time if they did not clock out.

76. In certain weeks, upon information and belief, the deducted one-half hour of pay would cause Named Plaintiffs, and those similarly situated, from receiving overtime compensation.

77. For example, the following check dates reflect checks issued for pay periods where Named Plaintiff Sorrell worked 40+ hours from the last week of 2024 and most of 2025:

a. January 3, 2025
b. January 17, 2025
c. January 24, 2025
d. January 31, 2025
e. February 7, 2025
f. February 21, 2025
g. February 28, 2025

h. March 7, 2025
i. March 21, 2025
j. April 4, 2025
k. April 25, 2025
l. May 9, 2025
m. May 23, 2025
n. June 13, 2025
o. July 3, 2025
p. July 18, 2025
q. July 25, 2025
r. August 1, 2025
s. August 8, 2025
t. August 22, 205
u. August 29, 2025
v. September 12, 2025

78. Upon acquiring copies of her pay records from Defendant, Named Plaintiff Sorrell will be able to specifically identify weeks during the course of her employment where she worked 40+ hours and Defendant's deduction of one-half hour of pay caused her to be deprived of earned overtime wages.

79. Upon information and belief, more such weeks exist for Named Plaintiff Sorrell dating back to the start of her employment with Defendant Betsy Ross.

80. On one or more occasions, Named Plaintiffs had complained with co-workers about Defendants meal break auto-deduction policy and practice and not being able to take meal breaks.

81. Named Plaintiffs regularly observed many other similarly situated Registered Nurses, Certified Nurse Assistants and Licensed Practical Nurses regularly not receiving meal breaks, and complaining about not getting paid for all time they worked.

82. Defendants consistently and repeatedly used this policy, procedure and method of automatically deducting one-half hour for meal breaks whether taken by the employee or not and at times failing to pay overtime across the members of the putative class.

83. Named Plaintiffs, and those similarly situated, did not receive wage notices.

84. Named Plaintiffs, and those similarly situated, received from Defendants inaccurate pay statements for each and every pay period that wrongfully deducted one or more one-half hour meal breaks that were not actually taken by Named Plaintiffs and those similarly situated. The pay statements were unreliable in that they incorrectly recorded all hours for which Named Plaintiffs and those similarly situated were owed pay and misled them as to whether they were properly paid for all hours worked. Each pay statement that wrongfully stated the hours due to Named Plaintiffs and those similarly situated constitutes a separate and individual actionable violation of the FLSA and NYLL, as stated herein.

**FIRST CAUSE OF ACTION**

**UNPAID WAGES AND OVERTIME UNDER FLSA**

85. The Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

86. Named Plaintiffs and similarly situated hourly employees of Defendant bring this claim for relief pursuant to the Fair Labor Standards Act ("FLSA") at 29 U.S.C. § 201, et seq.

87. Under the FLSA, Named Plaintiffs and similarly situated hourly employees are entitled to be compensated for all hours worked where such time is compensable time and is also subject to the regular time and overtime provisions of sections 206 and 207 of the FLSA.

88. Defendant willfully, knowingly, purposefully, and recklessly failed to pay Named Plaintiffs and similarly situated hourly employees for all time worked, including time which would have qualified as overtime.

89. Upon information and belief, Named Plaintiffs and those similarly situated hourly employees frequently worked more hours than what they were paid for and frequently had

adjustments made to their time clock records resulting in a paycheck for less time than what the Named Plaintiffs and those similarly situated actually worked.

90. On this claim for relief, the Named Plaintiffs on behalf of themselves and other similarly situated hourly employees of Defendant, seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid to the Named Plaintiffs and other similarly situated employees.

91. The Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the FLSA.

**SECOND CAUSE OF ACTION**

**UNPAID REGULAR TIME AND OVERTIME UNDER NYLL**

92. Named Plaintiffs repeat each and every allegation previously made here and as if set forth fully herein.

93. Pursuant to Article Six of the New York Labor Law, workers, such as Named Plaintiffs and other members of the putative class action, are protected from wage underpayments and improper employment practices.

94. Pursuant to New York Labor Law § 190, the term "employee" means "any person employed for hire by an employer in any employment."

95. As persons employed for hire by Defendant, Named Plaintiffs and other members of the putative class action are "employees," as understood in Labor Law § 190.

96. Pursuant New York Labor Law § 190, the term "employer" includes "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

97. As an entity that hired the Named Plaintiffs and other members of the putative class, Defendant is an "employer."

98. Named Plaintiffs and other members of the putative class agreed upon wage rate and/or overtime compensation rate constitutes “wages” within the meaning of New York Labor Law §§ 190, 191.

99. Pursuant to New York Labor Law § 191 and the cases interpreting the same, workers such as Named Plaintiffs and other members of the putative class action are entitled to be paid all their weekly wages "not later than seven calendar days after the end of the week in which the wages are earned."

100. Pursuant to New York Labor Law § 652 and the cases interpreting same, “Every employer shall pay to each of its employees for each hour worked a wage of not less than” the statutory minimum wage.

101. In failing to pay Named Plaintiffs and other members of the putative class proper wages for time worked in one week, Defendant violated New York Labor Law § 191, by failing to pay Plaintiffs and other members of the putative class all of their wages earned within the week such wages were due, and violated Labor Law § 652, by failing to pay Plaintiffs minimum wages for all hours worked.

102. Pursuant to New York Labor Law § 193, "No employer shall make any deduction from the wages of an employee," such as Plaintiffs and other members of the putative class, that is not otherwise authorized by law or by the employee.

103. By withholding wages for time worked in any given week from Plaintiffs and other members of the putative class, pursuant to New York Labor Law § 193 and the cases interpreting

the same, Defendant made unlawful deductions in wages owed to Plaintiffs and other members of the putative class.

104. Pursuant to New York Labor Law § 198, Named Plaintiffs and those similarly situated bring this action to recover wages to which they are entitled.

105. Under NYLL, Named Plaintiffs and similarly situated hourly employees are entitled to a half hour break when their scheduled shift exceeds 6 hours.

106. Additionally, Named Plaintiffs and similarly situated employees are also entitled to be paid for all hours worked and at an overtime rate of one and one-half times the regular hourly rate when their total hours exceeded 40 hours per week.

107. Even though Named Plaintiffs and similarly situated employees are entitled a half-hour rest breaks, and to be paid for all hours worked including overtime rates for hours exceeding 40 per week, Defendant refused and continues to refuse to provide required breaks and failed and continues to fail to pay Named Plaintiffs and those similarly situated for all hours worked at the appropriate rate of pay, including overtime rates for work in excess of 40 hours per week, as required under to NYLL §§ 190, *et. seq*., 650, *et. seq*., and 19 NYCRR §§ 142, *et. seq.*

108. Upon information and belief, Defendant willfully, purposefully, and maliciously failed to pay the required compensation or provided the required rest periods as articulated in this claim for relief.

109. On this claim for relief, the Named Plaintiffs on behalf of themselves and other similarly situated hourly employees of Defendant seek the payment of all unpaid wages and unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked and wages actually paid for the Named Plaintiffs and other similarly situated employees.

110. The Plaintiffs also seek an award of liquidated damages in the amount of 100% of the unpaid regular and overtime wages, plus attorneys' fees, interest, and costs as provided for by the NYLL.

## THIRD CAUSE OF ACTION

## FAILURE TO PROVIDE ANNUAL WAGE NOTICES AND PAY STATEMENTS UNDER NYLL

111. Plaintiffs repeats and re-alleges the allegations set forth above as if fully set forth herein.

112. Defendant has willfully failed to provide Named Plaintiffs and those similarly situated with wage notices, as required by NYLL § 195(1), in English or in the language identified as their primary language, containing Plaintiffs rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names use by the employer; the physical address of the employer's main office or principal place of business and a mailing address if different; the telephone number of the employer; plus, such other information as the commissioner deems material and necessary.

113. Defendant has willfully failed to provide Named Plaintiffs and those similarly situated with proper and accurate pay statements, as required by NYLL § 195(3), listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; accurate recording of all

hours due to be paid; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages.

114. Named Plaintiffs, and those similarly situated, did not receive all required wage notices and pay statements during their employment with Defendant.

115. Through their knowing or intentional failure to provide Named Plaintiffs with the wage notices and pay statements required by the NYLL, Defendant willfully violated NYLL §§ 191(1) and (3) and the supporting New York State Department of Labor Regulations.

116. According to NYLL § 198-1(b), Named Plaintiffs, and those similarly situated, are entitled to $50 for every day they did not receive a wage notice up to a total of $5,000, together with costs and reasonable attorney's fees.

117. According to NYLL § 198-1(b), Named Plaintiffs, and those similarly situated, are entitled to $250 for every week they did not receive a proper and accurate pay statement up to a total of $5,000, together with costs and reasonable attorney's fees.

118. By the foregoing reasons, Defendant violated NYLL §§ 195(1) and (3) and are liable to the Plaintiffs pursuant to NYLL 198-1(b) in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs.

**JURY TRIAL DEMANDED**

119. Plaintiffs demand that all issues of fact be decided by a jury.

**WHEREFORE**, Named Plaintiffs, individually and on behalf of all other persons similarly situated who were employed by Defendant, demand judgment:

(1) On the First Cause of Action against Defendant, all unpaid wages and unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the

amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to the FLSA;

(2) On the Second Cause of Action against Defendant, all unpaid wages and unpaid overtime wages in an amount to be determined at trial, plus liquidated damages in the amount equal to the amount of unpaid wages and unpaid overtime to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs, pursuant to New York Labor Law, and

(3) On the Third Cause of Action against Defendant, in an amount to be determined at trial, plus interest, attorneys' fees and costs; and

(4) Such other and further relief as this Court may deem just and proper.

Dated: Fayetteville, New York
October 24, 2025

By: */s/ Ryan G. Files*

Ryan Files, Esq.
Frank Gattuso, Esq.
GATTUSO & CIOTOLI, PLLC
The White House
7030 E. Genesee Street
Fayetteville, New York 13066
315-314-8000
315-446-7521 (fax)
rfiles@gclawoffice.com
fgattuso@gclawoffice.com

*Attorneys for the Plaintiff and putative class*